The next argument of the morning is 18-1726, Bassett, New Mexico LLC v. United States. Good morning, Your Honor. Good morning. I'm Roger Marzullo, appearing on behalf of Appellant. The resolution of this case, in our view, turns on a single legal issue, and that is whether the Bureau of Land Management had the authority, has the authority to grant to Bassett, New Mexico, an access right-of-way to its property, which is surrounded by federal land, federal land that is doubly designated as a wilderness area, formerly a wilderness study area, and secondly, also as a national monument. If the Bureau of Land Management cannot grant that easement, as we contend, then Bassett is left with a property that is surrounded by federal land that has no access and we allege then constitutes a Fifth Amendment taking. The case arises to this court on a Rule 12b-1, Motion to Dismiss for Lack of Rightness, and the decision was made that the court lacked jurisdiction based on an alleged lack of rightness. Bassett, New Mexico, owns a single parcel of property in rural Doña Ana County, New Mexico. It's surrounded by federal land. It's about 66 acres, and it has no physical access at this time. Mr. Marzullo. Yes, Your Honor. I have a question about the map that was provided in the material. So I understand there's Cherry Stem Road that would lead from Bassett's property through the wilderness study area, through the federal land, and then it would go to state land, and then from there it ends at private land. Do I understand that correctly? Yes, with one minor alteration, Your Honor, and that is that it actually dead ends at private property owned by a Mr. Hopkins. But before it gets to that private property, it goes through state land. It goes through state land as well. That is correct. Okay. So the problem with the Cherry Stem Road is that it dead ends. That is, it doesn't get Bassett to a public road. So it's not an access to a public road. It leaves the property still isolated, still surrounded by the federal lands and by dead ends into private lands. So that's not access. When Bassett purchased the land, there was access through that road because the private landowners had not foreclosed access. Do I understand that correctly? It wasn't until 1995 that the private landowners foreclosed access? That's correct, Your Honor. That was the physical access that was then used. Bassett had another right of access. It hadn't been built yet, and that is the right of access over the federal lands by a reasonable route. Can I ask a question about Cherry Stem Road? How long was Cherry Stem Road there? I think it had been there for quite some time, Your Honor, for many years. I guess, what, 50s, 60s, 40s? Probably, maybe even earlier than that because there was once upon a time a mineral mine on this property. Okay. And then, I guess you're saying in 1995, Cherry Stem Road, at least access to the main highway, got cut off by private landowners that controlled a portion of Cherry Stem Road. Well, yes, that's exactly right, Your Honor. And the state of New Mexico also rejected Bassett's application for easement over the state land. When was that rejection? That was back in about 1998, thereabouts. All of this testimony came out in the trial of the first case, which dealt with the fact that the government had, in the course of a Superfund cleanup process, collected mining waste and dumped it onto the Bassett property. And the Court of Federal Claims held that that was a Fifth Amendment taking. Then the issue became, what was the value of the property? And the answer to that question, given by the Court of Federal Claims, which is race judicata in this case, was why Bassett has access over federal land by a reasonable route under the existing interpretation of the Federal Land Policy Management Act, which was incorporated into the interim management policy. So we have a court determination that up to 2012, Bassett had the right to cross federal lands. As I understand it, the Federal Claims Court in 2002 was interpreting the then existing but interim guidance. Is that right? That's right. The interim guidance, which actually, Your Honor, I think it was the third of the manuals that BLM had promulgated, but it actually dated back to the adoption of the Federal Land Policy Management Act in 1976. Well, here's, I guess, the real crux of the issue. We're hearing from the other side, from BLM, the Bureau, that this case that you're bringing is just simply premature and you first have to file a formal application and then give BLM an opportunity to consider the merits of it and really figure out all the facts underlying what a possible right-of-way would look like and what the possibility is from BLM's side on the viability of Cherry Stem Road or some version of Cherry Stem Road. And so if we take the government at its word that all its communications to you and your client so far are not definitive denials, but only suggestions that it simply needs to see a true application from you before it can reach the merits, then on that score, why wouldn't it be correct for the claims court to deem this lawsuit to be premature because we still need to have all the fact-finding done at the administrative level before we figure out to what extent, if at all, there's been some form of a taking of your property. Yes, Your Honor, I think that is the crux of the appeal and the issue then, as I indicated at the start, comes down to does the Wilderness Act or the Wilderness designation allow BLM to issue such an easement? And why wouldn't, and secondarily, of course, does the designation as a national monument allow BLM, secondly, to issue such an easement? And our answer to both those questions is no. We think that's an issue of law. Now, why wouldn't Bassett go through the process? It's because it's a very complicated and expensive... Can you explain why? Because there are exceptions. I mean, the policies in the appendix, I can look at it, and you both cited it in your briefs, there are exceptions to the Wilderness Act that allow the Bureau to grant easements. There are, Your Honor. It shows you that none of those exceptions apply as a matter of law? As a matter of law, absolutely. If you read those exceptions, they deal with situations where it is necessary to maintain environmental values, where there is an emergency, where there is a health and safety issue. What about valid existing rights? Let me finish my question. If you bought this property under a regime where you were allowed to get a right-of-way, why can't they grant you an exception based upon that as a valid existing right? Valid existing right is a technical term. It's defined in the Federal Land Policy Management Act, which Congress enacted in 1976 as a general means of regulating the use and disposal of federal lands. Valid existing right is an existing use of federal lands as of the adoption of that statute. In effect, it's a grandfathering, Your Honor. Well, it's not just a grandfathering because the next exception in the manual is grandfathered uses. Well, that is a use that was not recognized, if you will. Yes, I agree that the policy identifies both of those, but my point is that valid existing right, and this Court has interpreted that term. So it's not just your view is that clause doesn't provide an exception for the grant of a new easement. It only grandfathers in preexisting easements. Yes, preexisting uses. It also deals with mining operations that were in effect at the time with certain grazing operations, I believe. Although it's not a valid existing right, it's still nevertheless a cognizable property interest that's been taken. The property interest that has been taken, Your Honor, is the fee ownership of 66 acres. I'm sorry for interrupting you. Not at all. I think that if you actually had applied for the right of access sometime during 1995 to 2012, that's when you would say, yep, you got that right of access, and now you have a valid existing right. I think that's what I hear you to be saying. So for me this begs a little bit the question of why during that time period, 1995 to 2012, did Bassett not apply for a right of access? The surrounding economic circumstances were not such that the property was in demand for residential use. It now is. It was as of 2014, and that's why Bassett then made the application, Your Honor. Where is this land exactly located? What makes it attractive for people to want to live all the way out there? I guess it depends on your perspective. I'm sure it's beautiful, but my understanding is it's very remote. Well, it's outside Las Cruces. There was actually testimony at the prior takings trial about the demand for residences in the Las Cruces area. This was sort of outside of the scope, but Las Cruces has expanded over the time, and I believe that that, although this is not in the record, that that has created this demand. How many miles is it from Las Cruces? I'm afraid I don't know. I would only have to guess, Your Honor. So in addition to the Wilderness Act, and, Your Honor, you asked about the valid existing right. I think valid existing right, as I understand it, is a term defined by the statute, by the Federal Land Policy and Management Act, and that definition is that it had to be a use existing as of 1976. Now, I think you're right about this question, and this, I think, is a second issue. As you'll note from the letter that Mr. Ellis sent to BLM, the Environmental Protection Agency, in the course of the cleanup, had actually created a road on a reasonable access across this land. But when they finished the cleanup, the EPA erased that road. They went back and took it out to try to return the land to its wilderness characteristic, which is, of course, areas of more than 5,000 acres that are roadless. So they took the road out so that this would revert to its character, its designated character as a wilderness study area, and most recently designated as an actual wilderness area. Judge Stoll, you're into your rebuttal. Yes. But Judge Stoll would like to ask a quick question. Yes, Your Honor. I just want to ask you about, there's a footnote 9 in the former Bassett opinion by the Court of Federal Claims, and I just was curious about what it meant. I wasn't sure, and so I want to tell you what it says, and maybe you can help me understand it. So it refers to, let's see, I'm sorry. It says, Plaintiff claims that it could have purchased an easement through state lands from private property owners. The access thus purchased would have allowed Bassett to traverse state land to reach the Baylor Canyon Road, but most likely would have come at great expense to plaintiff. Can you tell me what that's talking about? Yes. The bifurcated taking case first found a taking and then secondly went into valuation. In the valuation phase, Your Honor, the government argued that the property was landlocked, had no access, and therefore had no value. And the plaintiff, Bassett, was attempting to prove, yes, it did have value. They made two arguments. One was that BLM was required to grant access under the existing manual, and number two, that they could have acquired, they could have gone to the adjacent property owners and tried to purchase access and could have gone to the state and attempted to get access from the state. As I indicated, there was also evidence, and I believe the Court's opinion says this, that the state actually brought a witness to testify that they would not have granted access. I'd like to reserve the rest of my time. Okay. Thank you. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court, my name is Varu Cholukamari for the United States. I'd like to use my time to respond to some of the points that were made and to correct the record on them. Could you just get right to the policy and explain to me where in it you have the discretion to grant a right of way? Sure. I want to first make sure, though, that the 28-J letter that we submitted, as we noted, that part of the land surrounding the area is no longer a wilderness study area. Part of it is a wilderness designation. Part of it is not. And the part over which Bassett wants the road, between his parcel and the highway, is no longer a wilderness study area. It remains a national monument. But that doesn't make a difference here, right? Because the part where they want to have the road, it's still a national monument. So the analysis is not going to change. It's slightly different. How will it change from BLM's point of view? Sure. First, we think that the arguments made in our brief are correct because it's still a right. But in terms of whether or not when BLM processes the application and whether or not there's a valid existing right, the BLM, we're no longer looking at that prior wilderness policy or the new wilderness policy. We're now looking at the monument policy. How does the monument policy differ? The monument policy, also in the proclamation, make an exception for valid existing rights. But isn't that the same? Is it different from the valid existing rights policy we have before us? So the monument policy, and this is BLM Manual 6220 that's cited in the 28-J letter, on the last page it defines valid existing rights as existing rights are defined in Section 701 of FLPA as any valid lease, permit, patent, right-of-way, or other land use right or authorization and must be in existence at the time of the designation. And the designation is the monument designation. That's the relevant designation for determining whether or not there's a valid existing right. I'm sorry. I just want you to answer Judge Hughes' question. Is it the same rules for how to define what a valid existing right is for both situations or not? It's different for the monument because you look to whether or not the valid existing right exists at the time of the monument designation. So it's a timing issue. So instead of looking at 1976, you'd be looking at 2012. We'd be looking at 2014. I mean 2014. Yes. But in other respects, you'd be looking at whether there is any kind of land use right. And that's not a term that is limited to necessarily having a document. That could include implied rights. That's something that the BLM would have to decide during its process. What do you mean by implied rights? And again, we don't know because the facts haven't developed here. But if there was some type of historic road access, if there is some type of cases that he cited to talk about implied easements, if there's any kind of right that they want to raise in that respect, then the term valid existing right doesn't preclude that. That is something that they could raise to BLM, and they'd have to bring the historic documents to demonstrate that actually this road, the Cherry Stem, or another road that they had. Well, I guess that's what I'm trying to figure out. I'm trying to figure out theoretically if we were to speculate what set of facts would satisfy BLM such that BLM would grant a new right of way across federal lands to Bassett here. If you want to use the theory of valid existing right, go ahead. But as I understand it, the valid existing right is tied to Cherry Stem Road. And a brand new right of way going across other portions of this federally protected land or this monument land would be barred from getting granted that kind of a right of way. Unless you can tell me, no, that's not necessarily true because dot, dot, dot. What is that because? So I think that the burden is on the plaintiff to present the historic facts. Now, you're right that what would BLM – No, no, no. You're right that the burden is on the plaintiff to present the facts, but it has to be a scenario that you can legally accept. I mean, the rightness doctrine, the futility exception is very, very narrow, but it is applicable where under any set of facts you will never grant them permission. And I don't think we can say that with certainty that BLM was not going to grant them permission because, number one, there is a possibility of the Cherry Stem Road. And I think that's not what – Can we set this Cherry Stem Road aside because I think that's a – I mean, it's part of the brightness inquiry, but I think it's a different inquiry about whether if we conclude that that's not good enough, do they have the right – or can they ask you for an entirely different new right-of-way across federal land? And is there any legally permissible way that they can get an entirely new right-of-way across federal land? I think it's difficult to answer that question without knowing what the theory would be for their property interest. And I don't mean to avoid the – I mean, we can speculate. Well, let me give you a hypothetical. The theory is they are in a landlocked area surrounded by federal land that under general principles of property law, and I claim no expertise here. I'm making all this up, but go with me. You generally have an easement or a right-of-way to get access to public roads. That's their theory. There is no historical usage of other roads. They're going to have to build a new road, or they're going to make you build a new – well, they'll build it, I assume. But there's going to be a new road across federal land, whether it's through the monument or through the wilderness area. I think it doesn't matter as a hypothetical. Is there any scenario where you would grant permission to build a new access road across federal land that's unconnected in any historical usage? And where in the manual does it allow you to do that? So it would have to be a valid existing right. And in terms of whether or not they have a – whether or not a landlocked property – Does what I just talked about sound like a valid existing right? I don't know of any cases that say that if you purchase a landlocked parcel, and you don't have any kind of pre-existing easement by necessity, or there wasn't some type of easement by necessity given to you when you were given that parcel, that you have a right to create a new road across a third party's land. I don't know of a case that says that. So if that's the case, they purchased a parcel with no factual historical right-of-way out before, then I don't know of any cases that say that you can create a road across a third party's land. What about the 2002 Court of Federal Claims opinion here? So that opinion did not hold that they have a cognizable property right. What it said was that when evaluating the fair market value of that property, that they could reasonably secure at that time a new road from the government. But what's important is it was had Bassett applied under that policy, then they would be able to get that road. Bassett didn't apply in over the decade that passed. That policy is obsolete, and that policy is particular to wilderness review. It's exceptions to the non-impairment standard. It doesn't talk about the monument policy. So there's a difference here. There's no residue to cut effect based on that Bassett one decision, because the Bassett court didn't decide that there was a cognizable property interest. It was simply making evaluation determination. I'm still a little troubled because I don't really understand your position on whether there's a valid existing right for a right-of-way that never existed previously. I mean, it seems to me like the sum of your argument is, you know, we can't tell whether they're a valid existing right until they apply, and so they have to go through this burdensome process. But that's—to some extent, that has to be a legal question, doesn't it, whether they have a valid existing right. And if valid existing right consists of, you know, categories A, B, and C, and they don't have any arguments about why they fall on A, B, and C, isn't it futile for them to go through that? I don't think it is futile, Your Honor. I think that they—you're right, that the question is— let me make it very, very simple. If you have a policy, you're only going to grant a right-of-way if they have reasons A, B, or C. They agree completely that they have only A, B, or C. Their reason is D, and your policy doesn't permit D. Wouldn't it be futile then? Under that hypothetical, yes. I think that there's a question, though. A valid existing right is not purely a legal question. It is a factual question as well. And what it depends upon is whether or not you have an easement— you could have an easement by necessity. I mean, they throw out these various potential grounds for a property right, but we don't know— What are those besides Cherry Stem Road? What are these other potential things that you're referring to? The cases that they cite to initially in their briefs, they cite to sort of ways of necessity doctrine, which we don't think applies here, but they haven't really shown that they have been— that the government has cut them off to an access road. It's the third parties that have done that. They also cite to cases that say that the government can't fence you in into your property. Again, we don't see that happening. They cite to cases talking about an easement by necessity, and there's a historic fact that would need to be discovered there. If there's a parcel that's granted and we've given them a road out, and then subsequently there's additional sale of that—severance of that parcel, there might be a historical easement by necessity for the dominant— But as of right now, they haven't presented any facts. They haven't. Of these kinds that you're referring to, right? Exactly. So the only thing that they're relying on is that do they have a valid existing right because they previously, from 1995 to 2012, could have asked for easement? Under that theory, we would say no. The Bassett 1 decision does not create a valid existing right. If there's something else underlying that, they can explore that with BLM, but the Bassett 1 decision and that prior policy standing alone do not create a— That's our position. It does not create a property interest. Can we go back to the matter of Cherry Stem Road? Because I'm trying to piece through what we're supposed to think about it at this point in time, in that they always had access through federal lands on Cherry Stem Road, but for a long, long time, it's now been a road to a brick wall because private landowners on the back end of Cherry Stem Road have blocked any access to public highways. So if the government were to say in response to an application for a right-of-way, well, you can have Cherry Stem Road. Congratulations. Is that really a meaningful right-of-way? Isn't that just a road to a brick wall? Two points, Your Honor. I do think it is something that would have to be considered in terms of a takings analysis because we need to know how much we are giving them. And as Your Honor pointed to in that footnote at footnote 9 of the Bassett 1 decision and what the CFC said below is that the Cherry Stem coupled with something else might give them a way to the county road. Are you saying coupled with something else being some sort of road through the state land prior to getting to the brick wall? Either a road through the state land or purchasing an easement. There are a variety of potential options, but it's important to know for a takings analysis to know how much access the government is going to give them. And I want to make sure one thing is clear because opposing counsel said that they have physically no access, and that's simply not true. First of all, these are public lands. They are open to pedestrian access. The property is two-thirds of a mile away from the county road. So they have pedestrian access to their property, and the federal government has done nothing over the last 20 years to disturb their access to the property or to prevent them from coming and going. They also have, of course, access on the Cherry Stem road, pedestrian as well as vehicular. So it's not that any action by the federal government has stopped them from entering or exiting the federal lands. At this point in time, is there a way a car from their property can get to the public road? All we know is that they can get through the Cherry Stem. Wait, wait, wait, wait. They can get through the Cherry Stem? My understanding is, and I don't think you're disputing, that they can't get to the public road on Cherry Stem road because their access is blocked to the portion of Cherry Stem road that is controlled by private landowners. Is that right? Based on the declarations, yes. So right now there's no way for a car to drive from Bassett's property to the public highway. Is that fair to say? That is fair to say. But what I want to make clear is that there's the physical access. This is not a physical taking claim. This is not a claim of them not being able to access their property at all. It's a question of them wanting to get an improved, another type of route. And that's why, to your question about what good is Cherry Stem, it is important to consider if we were to consider a regulatory taking claim. We would have to know the amount of access that the government would give. And giving them a paved road, because right now Cherry Stem is an unimproved road, so giving them a right-of-way, first of all, over that road, and paving that road would give them a better way out of federal lands. I understand it's not what they're asking for, but that's the kind of thing that we would have to consider in a regulatory takings analysis. We can't get to that without knowing what the BLM is going to actually provide. My understanding from what I just heard from Mr. Marzulla is that, one, the state denied an application to move off of Cherry Stem Road through state lands to get to the public road back in 1998. And then secondly, during the trial in the lead-up to the Claims Court 2002 opinion, some state official testified that they would not be granting any additional access to Bassett through state lands. Is that fair? Are those accurate statements, as you understand them? As I understand them, that's what they've presented. Those are things that happened 20 years ago. I don't understand us to have any information about what would happen now, or that they've attempted to challenge that state decision, or that they've attempted to challenge the third parties who are blocking their road. I mean, it's quite possible that the road, the Cherry Stem, and then the road that's going through the private properties was some type of public road, or they have some type of easement to use that road, and it's actually not the government but the third parties who are blocking their access. So that's the kind of analysis as to whether or not they actually have a property interest in that road. Are you suggesting that Bassett ought to sue those private landowners for some kind of easement? No, what I'm saying is that there's a lot of facts here that we don't know, and those facts are necessary to know whether or not they have a property interest in this Cherry Stem road or in any other type of access route. Are you suggesting that in their application to BLM, they would need to reassess whether they could successfully get an easement from the state or get some sort of access through the private land by doing it any more current timeframe since the last time they tried to do so was 20 years ago? I mean, that might be something that you would analyze in a regulatory systems case, but what they would provide to BLM, BLM would look to see whether these exceptions, whether there's a valid existing right, and BLM would likely ask for kind of a historical fact. When was this property conveyed? What were the roads in existence at the time that the property was conveyed? What was the background of that? Would they look at attempts to gain access otherwise, for example, through state land or through private land? I think they could. I mean, that's part of it. But do they? I'm just asking you. Would they do that as a normal course? You're saying they could. Do you have more specific answers? So under the prior wilderness policy that we've been talking about, under that policy for reasonable access, they do look at sort of the facts on the ground and whether there's alternative means. Before they build a road through the National Monument, they are going to look at alternative routes. They would look at that as well when they do a NEPA analysis to check the environmental impacts. They would see whether there are alternate routes available. So that is something that the BLM has the authority and would look at in terms of alternate roads. One other point I want to make is that, Jedstow, you asked the question about how long has this land been blocked by the private owners? And it actually is much longer. It goes back way before they purchased the property. In the original Bassett 2002 opinion at page 70, they note that in 1983, the Mundys, a prior landowner of this parcel, had been blocked by private owners. And we say that in our brief at page 8. So it's not that the Bassett purchased this property and had this right of way, and then suddenly they were blocked. This is the historic context of this parcel is that it had been blocked before, way beyond a statute of limitations here in a normal takings case and way before Bassett purchased the parcel. So that's the condition in which we have. Thank you, Your Honor. Thank you very much. I'm sorry. Let's give Mr. Marzullo three minutes of rebuttal. Thank you, Your Honor. Just a point or two. I think, first of all, the Bureau of Land Management made none of the suggestions that the government is offering today. You can look at the letter that Mr. Wallace sent, which is at appendix 90. You can look at Mr. Ellis' declaration of a telephone conference that involved both counsel for the Justice Department and myself, as well as the BLM employees in Albuquerque, who would be handling this application, in which Mr. Childers said, we cannot give you an easement over any area other than the Cherry Stem Road. You can look at Mr. Ellis' letter at appendix 34, in which he recites, and this was uncontradicted as well, his conversation with Mr. Noonan from the Albuquerque office back in 2014, which Mr. Noonan said that there was no way that this permit would be issued to Basset, New Mexico. So when you wonder, well, why is it that we haven't come up with all of these other ideas, the response has always been that you can go through this, you can spend all this money doing surveying and environmental impact statements and archeological studies and paleontological studies and all the rest, but you are not going to be able to obtain a right-of-way. Finally, the government seems to switch back and forth between the determination, and I would remind the court that what is before this court, is a determination that the court lacks jurisdiction because the case isn't right, because Basset hasn't applied for this permit. Now, whether these other arguments about pedestrian access, you could walk two-thirds of a mile up a hill to your house and have no auto access, whether those would prevail in a taking case, I think only arise once the court determines that, in fact, there is jurisdiction in this case, as we believe. Thank you, Your Honor. Okay, thank you. Case is submitted.